**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Earl Felton Crago, Jr., ) | No. CV 14-2007-TUC-FRZ (LAB) |
| Petitioner, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| Charles L. Ryan; et al., ) | |
| Respondents. ) | |

Pending before the court is an amended petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, filed on July 31, 2015, by Earl Felton Crago, Jr., an inmate confined in the Arizona State Prison Complex in Buckeye, Arizona. (Doc. 25)

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Bowman for report and recommendation.

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order denying the petition. Crago's sentencing claims are procedurally defaulted. His *Brady* claim should be denied on the merits.

Summary of the Case

Crago was convicted of first-degree murder after a jury trial. (Doc. 30-1, p. 4) On August 21, 1995, the trial court sentenced him to "a LIFE term in the Department of Corrections." *Id*. The trial court further explained that "the Defendant must serve every day of twenty-five (25) years of the sentence imposed before he is eligible for any type of release."

*Id.* Finally, the court ordered that "pursuant to A.R.S. § 13-603(I), the Defendant will be required to do mandatory community supervision sentence – one day for every seven days sentenced to, for a total of 3 years, 7 months." *Id.* The community supervision order was erroneous. It would have been appropriate if Crago had been sentenced to a term of imprisonment lasting 25 years. Crago, however, was sentenced to life imprisonment.

Crago filed a direct appeal and three post-conviction relief (PCR) petitions challenging various aspects of his trial and his representation. (CV 05-772 TUC FRZ, Docs. 34, 37) He filed in this court a petition for writ of habeas corpus on December 27, 2005. *Id.* The petition was denied as time-barred on December 31, 2008. *Id.*

On March 18, 2008, Crago filed in state court a "petition for writ of habeas corpus" (Doc. 30-1, p. 12) Apparently, when Crago began serving his sentence, the Arizona Department of Corrections (ADOC) recorded a start date and end date for Crago's community supervision sentence assuming he was scheduled for release after 25 years.. (Doc. 30-1, p. 18) In early 2008, ADOC amended its records to reflect that Crago was sentenced to life imprisonment and would not be released on community supervision after 25 years. (Doc. 30-1, p. 20) Crago argued in his petition that ADOC was unlawfully changing his sentence. The state court construed the filing as Crago's fourth notice of post-conviction relief and appointed counsel. (Doc. 30-1, p. 22) Counsel filed a notice explaining he was unable to find any meritorious issues. (Doc. 30-1, p. 24) He explained that while a Rule 32 petition can be filed if a person were held beyond the expiration of his sentence, Crago had not yet served 25 years, so his argument was not yet ripe. (Doc. 30-1, p. 25) The state court gave Crago time to file a petition pro se. (Doc. 30-1, p. 28) When Crago failed to file a timely petition, the trial court dismissed the post-conviction relief proceedings on November 6, 2008. (Doc. 30-1, p. 31)

Four days later on November 10, 2008, Crago filed a Petition for Special Action. (Doc. 30-1, p. 33) He insisted he was given "a life sentence with release after 25 years and to serve exactly 3 years 7 months community supervision." (Doc. 30-1, p. 34) He argued ADOC had changed his sentence to "'natural life' with no release eligibility and no community supervision." (Doc. 30-1, p. 34) The trial court denied the petition on November 14, 2008,

apparently on procedural grounds. (Doc. 30-1, p. 40) Crago filed a petition for review with the Arizona Court of Appeals. (Doc. 30-2, p. 9)

On May 12, 2009, the Arizona Court of Appeals affirmed the trial court's dismissal of the Rule 32 proceeding because Crago failed to file a petition. (Doc. 30-2, p. 12) The court remanded the Petition for Special Action for further proceedings. (Doc. 30-2, p. 12) On August 5, 2009, however, Crago voluntarily withdrew his Petition for Special Action. (Doc. 30-2, p. 19)

On April 8, 2010, Crago filed his fifth notice of post-conviction relief. (Doc. 30-2, p. 22) He states this is the proceeding in which he exhausted Claim (1) and Claim (2) of the pending petition. (Doc. 25, pp. 6-7); *see also* (Doc. 30-4, pp. 11-13); (Doc. 30-5, p. 5)

In his notice, Crago asserted that during plea negotiations, the trial court told him in chambers that if he were convicted at trial, he would get a sentence of 25 years to life. *Id.* He maintains he rejected a plea agreement for 22 years' imprisonment on the strength of that advice. *Id.* He filed his petition on October 7, 2010. (Doc. 30-3, p. 2) In that petition, which was prepared by counsel, Crago abandoned his plea agreement issue and returned to his original sentencing issue. He argued he was given a minimum sentence of 25 years and ADOC improperly changed his sentence to natural life imprisonment. (Doc. 30-3, pp. 2-9) On May 4, 2011, the trial court denied the petition holding that Crago got the only sentence permitted by law – life without possibility of release for 25 years. (Doc 30-4, pp. 7-8) The court held that the community supervision term was contrary to law but found that the court was unable to correct it. *Id.*

On May 23, 2011, Crago filed a petition for review. (Doc. 30-4, pp. 11-15) He argued that he rejected a plea agreement for "22 years flat" in reliance on the trial court's incorrect assessment that he faced "a sentence of incarceration totaling twenty-five years" if he were convicted at trial. *Id.*, p. 11  He further argued that "[i]f a statute is so vague as to cause a Senior Superior Court Judge to misunderstand its meaning and wrongly apply it at the plea offer stage, and the sentencing stage, then it violates the due process requirements of the [F]ifth and [F]ourteenth [A]mendments." *Id.*, p. 13  He argued in the alternative that the trial court was

- 3 -

1  correct, and he *was* given a sentence of 25 years imprisonment followed by three years and
2  seven months of community supervision. *Id.*, pp. 12-13

3        The Arizona Court of Appeals held that Crago's issues were precluded citing
4  Ariz.R.Crim.P. 32.2(a). (Doc. 30-5, p. 7) In the alternative, the court held that Crago received
5  a lawful sentence – life without the possibility of release for 25 years – and that ADOC's
6  removal of the erroneously imposed term of community service did not cause him prejudice.
7  (Doc. 30-5, pp. 2-9) The court affirmed the trial court's determination that "the imposition of
8  community supervision *was* contrary to law." (Doc. 30-5, p. 8) (emphasis in original) The
9  Arizona Supreme Court denied review on February 23, 2012. (Doc 30-5, p. 11)

10        On March 12, 2012, Crago filed in this court a petition for writ of habeas corpus pursuant
11  to 28 U.S.C. § 2254. (CV 12-0176 TUC FRZ (BPV), Doc. 1) The petition was dismissed as
12  "second or successive." (CV 12-0176 TUC FRZ (BPV), Doc. 5)

13        On July 16, 2012, Crago filed his sixth notice of post-conviction relief. (Doc. 30-5, p.
14  22) On August 2, 2013, the trial court held that Crago's claim that counsel failed to correctly
15  advise him about the sentence he would get if he were convicted at trial was precluded pursuant
16  to Rule 32.2(a)(3). (Doc. 30-6, p. 10) Crago filed a petition for review on September 9, 2013.
17  (Doc. 30-6, p. 14) The Arizona Court of Appeals denied relief on March 11, 2014, finding
18  Crago's ineffective assistance claim precluded. (Doc. 30-6, pp. 43-46) The Arizona Supreme
19  Court denied review on July 25, 3014. (Doc. 30-6, p. 48)

20        On March 21, 2014, Crago filed his seventh notice of post-conviction relief (PCR) in
21  which he first raised the issue that constitutes Claim (3) of the pending petition. (Doc. 30-7, p.
22  2); (Doc. 25, p. 8) In his notice, Crago asserted that he received an anonymous letter from
23  someone in the Cochise County Attorney's Office who said that he found a note in Crago's file
24  stating as follows: "DNA not a positive match, defendant doesn't know, go ahead and tell the
25  jury that the victim's blood was found in the defendant's vehicle." (Doc. 30-7, pp. 2-16) Crago
26  argued that this falsehood was reported to his counsel, who then convinced Crago to testify that
27  he killed the victim in self-defense. *Id*.

28

1    The trial court found that the only DNA report in Crago's file was dated June 27th, after
2 his April 1995 trial. (Doc. 30-10, pp. 4-5) The report gives results from two "bloodstains on
3 seat material." *Id*. The results from one stain were "inconclusive." *Id*. The results from the
4 other stain matched the victim's DNA profile at one locus but was inconclusive at four other
5 tested loci. *Id*.

6    Crago submitted a number of other documents that he stated were "records given to the
7 defendant" (Doc. 30-10, p. 5) One of these documents purported to be a DNA test performed
8 prior to his trial, on March 23, 1995. *Id*. The trial court gave the documents no weight because
9 their provenance was not established. *Id*.

10   The trial court found, among other things, that nothing supported Crago's argument that
11 the prosecution lied to Crago's counsel about the DNA before trial and that lie induced counsel
12 to convince Crago to change his trial theory to self-defense. Crago's trial counsel announced
13 on February 22, 1995 that Crago would assert self-defense. (Doc. 30-10, p. 14) There were no
14 DNA tests performed before that date. (Doc. 30-10, p. 18)

15   Moreover, if Crago had pursued an alibi defense instead of self-defense, he still would
16 have been convicted. (Doc. 30-10, pp. 18-27)

17   Crago filed a petition for review on November 3, 2014. (Doc. 30-11, p. 2) The Arizona
18 Court of Appeals affirmed the trial court on February 25, 2015. (Doc. 30-11, p. 18) The court
19 of appeals held that Crago failed to present "evidence contradicting the court's determination
20 that the only DNA tests were completed after trial." (Doc. 30-11, p. 20) On July 21, 2015, the
21 Arizona Supreme Court denied review. (Doc. 30-13, p. 4)

22   Previously, on March 13, 2014, the Ninth Circuit held that "the 2011 state court
23 decisions effectively amended the petitioner's judgment of conviction by removing the
24 community supervision provision from his sentence." (Doc. 1-1, p. 9) Accordingly, Crago
25 could file a "second-in-time" petition for writ of habeas corpus without obtaining the prior
26 authorization required for filing a "second or successive" petition. *Id*. On April 7, 2014, Crago
27 filed in this court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1)
28 The petition was stayed while Crago exhausted his seventh PCR proceeding.

On July 31, 2015, Crago filed the pending amended petition for writ of habeas corpus (Doc. 25)  He claims (1) "the state court misinformed [him] as to the mandatory minimum sentence he faced" so he could not "make informed decisions about whether or not to accept a plea offer," (2) "the Arizona truth-in-sentencing statute is vague, misleading and incomplete in structure as it applies to first degree murder mandatory minimum sentences," and (3) the state violated *Brady* by misrepresenting the DNA results. *Id.*  The petition is not a "second or successive" petition because the Arizona Court of Appeals "effectively amended the petitioner's judgment of conviction by removing the community supervision provision from his sentence." (Doc. 25, p. 36)

In their answer, the respondents argue Crago's three claims are procedurally defaulted. (Doc. 26)  Crago filed a reply on December 31, 2015.  (Doc. 42)

The court finds that Crago's sentencing claims are procedurally defaulted.  His *Brady* claim should be denied on the merits.

Discussion

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  If the petitioner is in custody pursuant to the judgment of a state court, the writ will not be granted unless prior adjudication of the claim –

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The petitioner must shoulder an additional burden if the state court considered the issues and made findings of fact.

>   In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254 (e)(1).

"[The] standard is intentionally difficult to meet." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e] Court's decisions." *Id.*

A decision is "contrary to" Supreme Court precedent if that Court already confronted "the specific question presented in this case" and reached a different result. *Woods*, 135 S.Ct. at 1377. A decision is an "unreasonable application of" Supreme Court precedent only if it is "objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* at 1376. "To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (punctuation modified)

If the highest state court fails to explain its decision, this court looks to the last reasoned state court decision. *Young v. Runnels*, 435 F.3d 1038, 1042 (9th Cir. 2006).

Federal habeas review is limited to those issues that have been fully presented to the state court. This so-called "exhaustion rule" reads in pertinent part as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State. . . .

28 U.S.C. § 2254(b)(1)(A).

To be properly exhausted, the federal claim must be "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971). In other words, the state courts must be apprised of the issue and given the first opportunity to rule on the merits. *Id.* at 275-76. Accordingly, the petitioner must "present the state courts with the same claim he urges upon the federal courts." *Id.* "The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis." *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999).

In addition, the petitioner must explicitly alert the state court that he is raising a federal constitutional claim. *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995); *Casey v. Moore*, 386 F.3d 896, 910-11 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005). The petitioner must make the federal basis of the claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

If the petitioner is in custody pursuant to a judgment imposed by the State of Arizona, he must present his claims to the state appellate court for review. *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005), *cert. denied*, 546 U.S. 818 (2005); *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000). If state remedies have not been exhausted, the petition may not be granted and ordinarily should be dismissed. *See Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). In the alternative, the court has the authority to deny on the merits rather than dismiss for failure to exhaust. 28 U.S.C. § 2254(b)(2).

A claim is "procedurally defaulted" if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.*

Procedural default may be excused if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998). "To qualify for the fundamental miscarriage of justice exception to the procedural default rule, however, [the petitioner] must show that a constitutional violation has probably resulted in the conviction when he was actually innocent of the offense." *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008).

Discussion

In Claim (1), Crago argues his rights under the First, Fifth, and Fourteenth Amendments were violated when "the state court misinformed [him] as to the mandatory minimum sentence he faced for the charge of first degree murder" so he was unable to "make informed decisions about whether or not to accept a plea offer." (Doc. 25, p. 20) In Claim (2), he argues his rights under the First, Fifth, and Fourteenth Amendments were violated because "the Arizona truth-in-sentencing statute is vague, misleading and incomplete in structure as it applies to first degree murder mandatory minimum sentences." (Doc. 25, p. 24)

He maintains he presented these issues in his fifth post-conviction proceeding. (Doc. 25, pp. 6-7) The court assumes, without deciding, that Crago did so. (Doc. 25, Exhibit U) The Arizona Court of Appeals, however, held that all of Crago's sentencing issues were precluded citing Ariz.R.Crim.P. 32.2(a). (Doc. 30-5, p. 7); (Doc. 30, Exhibit V, p. 6) Presumably, Crago could have raised these issues earlier either in his direct appeal or in his fourth post-conviction relief petition. Accordingly, Claim (1) and Claim (2) are procedurally defaulted. *See Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002).

Crago argues that "[t]he court's finding of preclusion was based on its erroneous finding that removing the community supervision release from Crago's sentence did not amount to an amendment of the judgment of conviction." (Doc. 42, p. 23) This argument is not entirely clear. The record contains an order from the Ninth Circuit holding that because the state court amended his sentence, Crago could file a "second-in-time" § 2254 petition without the need for obtaining prior authorization to file a "second or successive" petition. (Doc. 1-1, p. 9) Crago may be confusing a federal legal principle that a petitioner is "precluded" from filing a second or successive habeas petition absent prior approval from the court of appeals with a state legal principle that a petitioner is "precluded" from raising claims in a subsequent post-conviction relief petition that should have been raised earlier. *See* 28 U.S.C. § 2244(b)(3)(A); Ariz.R.Crim.P. 32.2(a). Claims (1) and (2) are procedurally defaulted because the Arizona Court of Appeals explicitly stated that Crago's sentencing claims were precluded citing Ariz.R.Crim.P. 32.2(a). (Doc. 30-5, p. 7); (Doc. 30, Exhibit V, p. 6)

Crago further argues that his claims are not procedurally defaulted because the Arizona Court of Appeals reached the merits of his claims. He is incorrect. The Arizona Court of Appeals reached the merits of his petition in an alternative holding that addressed only Crago's contention that the BOP somehow changed his sentence from a determinant sentence of 25 years to life imprisonment. (Doc. 30-5, pp. 7-9), (Doc. 30, Exhibit V, pp. 6-8) The Arizona Court of Appeals did not reach the merits of Crago's plea negotiation claims. *Id.* Moreover, it would not matter if it had. An alternative holding on the merits does not mitigate the preclusive effect of that court's original procedural bar. *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.").

Finally, Crago argues that if his claims are defaulted, this default should be excused because he is actually innocent. He maintains a certain John Wood shot the victim, and he was on Fort Huachuca at that time.

"[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37, 126 S. Ct. 2064, 2076-77 (2006) (punctuation modified). Relief is available only if the petitioner's case is truly "extraordinary." *Id.* at 537; *Id.* at 2077.

In his seventh PCR proceeding, Crago made a similar claim. Pursuant to Ariz.R.Crim.P. 32.1(e) he argued he had "newly discovered material facts" that "probably would have changed the verdict" had they been introduced at the trial. (Doc. 30, Exhibit OO, p. 8) The trial court held to the contrary that if Crago had introduced those facts and had pursued an alibi defense, he still would have been convicted. *See* (Doc. 30- 10, pp. 18-26); (Doc. 30, Exhibit OO, pp. 17-25); Ariz.R.Crim.P. 32.1(e). This court is in agreement. *See below.* Crago's procedural default is not excused under the "actual innocence" exception.

The court finds in the alternative that Claims (1) and (2) are not cognizable. While a defendant's decision to plead guilty must be knowing and voluntary, the opposite is not true. *Emery v. Cate*, 2013 WL 5728108, at *7 (C.D. Cal. 2013). Due process does not require that

- 10 -

a decision to *forgo* a plea must also be knowing and voluntary. *Id*. That is because plea negotiations are not constitutionally mandated, and if the plea is rejected, the negotiations have no direct affect on the ultimate conviction. *Id*.; *see Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S. Ct. 837, 846 (1977). Put another way, "[Petitioner] can obtain federal habeas corpus relief only if his custody is in violation of the Federal Constitution." *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S. Ct. 2543, 2546 (1984). Here, Crago is in custody because of a conviction he received at trial. It is this conviction that receives constitutional scrutiny. And here, this conviction was obtained after a full and fair trial.[1] His claim is not cognizable. *Toepfer v. United States*, 518 F. App'x 834, 841 (11th Cir. 2013) ("Toepfer's contention that his decision to go to trial was involuntary does not state a cognizable due process violation, at least not under existing law."); *Williams v. Grounds*, 2015 WL 5579901, at *12 (C.D. Cal. 2015), report and recommendation adopted, 2015 WL 5567745 (C.D. Cal. 2015); *Emery v. Cate*, 2013 WL 5728108, at *7 (C.D. Cal. 2013); *see also Mabry v. Johnson*, 467 U.S. 504, 507-08, 104 S. Ct. 2543, 2546 (1984) (Petitioner could not attack subsequent guilty plea on the grounds that the government previously took from him a more favorable plea agreement.).

In Claim (3), Crago argues the state violated his "right to due process of law as defined by the U.S. Supreme Court in *Brady v. Maryland* . . . ." (Doc. 25, p. 27) He bases this claim on an anonymous letter revealing the contents of a note allegedly found in Crago's prosecution file. The note allegedly read as follows: "DNA not a positive match, defendant doesn't know, go ahead and tell the jury that the victim's blood was found in the defendant's vehicle." (Doc. 25, p. 29) Crago maintains he presented this issue in his seventh post-conviction relief petition. (Doc. 25, p. 8) The respondents argue this claim was not properly exhausted because Crago did not mention *Brady* in his petition before the *trial* court.

---

[1] Crago challenges the fairness of his trial in Claim (3) but not here. Here, he objects to plea negotiations that "*caused* him to receive a full and fair trial." *See Lafler v. Cooper*, 132 S.Ct. 1376, 1392 (2012) (Scalia, J., dissenting) (emphasis in original). There is no due process violation. If counsel was ineffective during plea negotiations, then the defendant's *Sixth Amendment* rights might be at issue. *See Lafler v. Cooper*. Crago raised a Sixth Amendment claim below, but the state courts found it precluded. (Doc. 30-6, pp. 10, 43)

- 11 -

Assuming, without deciding, that the claim was properly exhausted, the court finds the claim should be denied on the merits. *See* 28 U.S.C. § 2254(b)(2).

Under *Brady,* a defendant has a due process right to material exculpatory evidence in the possession of the prosecution at the time of trial. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). "Impeachment evidence, . . . as well as exculpatory evidence, falls within the *Brady* rule." *U.S. v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380 (1985). "[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in theسense that its suppression undermines confidence in the outcome of the trial." *Id.* at 678, 3381. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 3383.

At trial, Crago admitted that he killed the victim, put the body in his car, and dumped it in a wash. (Doc. 30-10, p. 11) He maintained, however, that the killing had been in self-defense. *Id.* He now claims the prosecution falsely told his counsel that DNA evidence linked the victim to his car, and as a result, his counsel convinced him to testify falsely that he killed the victim in self-defense. *See* (Doc. 30-10, p. 13) He argues that if the true DNA evidence had been disclosed, he would have maintained his innocence. *See* (Doc. 30-10, p. 8) He says now that he was on Fort Huachuca at the time of the killing, and a certain John Wood was the actual killer. *See* (Doc. 30-10, p. 19)

The trial court analyzed in detail Crago's false-DNA-evidence claim. The court had doubts about the reliability of the anonymous letter. (Doc. 30-10, pp. 2-27); (Doc. 30, Exhibit OO) Crago's file was in storage so it is unlikely that a whistle blower in the Cochise County Attorney's Office would have had an opportunity to examine it. (Doc. 30-10, p. 3, n.1); (Doc. 30, Exhibit OO, p. 3, n. 1) The alleged DNA strategy note referred to in the letter is not in the file. *Id.* There *is* a DNA analysis in the file, but it is dated approximately two months *after* the trial was completed. *Id.*, pp. 4-5; *Id.*, pp. 3-4  Moreover, the jury was not presented with *any* scientific evidence, DNA or otherwise, linking the victim to the stains found in the defendant's vehicle. (Doc. 30-10, pp. 6-7); (Doc. 30, Exhibit OO, pp. 5-6) Nevertheless, the state court

- 12 -

considered whether a misrepresentation of the DNA evidence could have caused a change in the outcome of the trial: What would have happened if Crago had adopted an alibi defense rather than claiming self-defense?

The trial court concluded that even if Crago had adopted an alibi defense, he still would have been convicted. At trial, 15-year-old S.A. testified that he heard gunshots at approximately 5:00 a.m. in his Sierra Vista neighborhood. (Doc. 30, p. 2); (CV 05-772 TUC FRZ, Doc. 11-9, p. 58) From his bedroom window, he saw Crago standing next to his Nisan 300ZX in the driveway of S.A.'s house. *Id.* S.A. then went into the living room from where he saw Crago pick up the victim's body from the driveway. *Id.* He then heard the car drive off. *Id.* S.A. recognized the victim, Charlie Davidson, because he was his mother's boyfriend. (Doc. 30, Exhibit OO, p. 25) He further testified that he saw Davidson and Crago together at his house "five to ten times." *Id.* On one occasion, Crago showed S.A. a gun that he said was a .38. *Id.*

Several other neighbors testified that they heard the gunshots and saw a man lying in S.A.'s driveway next to a small hatchback vehicle. (Doc. 30, p. 3); (CV 05-772 TUC FRZ, Doc. 11-9, pp. 58-59) They saw someone place the man in the passenger seat of the car and drive away. *Id.* The victim's body was found in the desert four days later. *Id.*

Crago was arrested the day after the murder in Texas. (Doc. 30, p. 4); (CV 05-772 TUC FRZ, Doc. 11-9, pp. 58-59) He told police that "he did not know a Carl Davidson." (Doc. 30-10, p. 10) Police found what appeared to be bloodstains on the front passenger seat of Crago's Nissan. *Id.*

Detention Officer Pedro Velasquez testified that he overheard Crago "bragging to the effect how he took this guy, killed him." (Doc. 30-10, p. 25); (Doc. 30, Exhibit OO, p. 24) Crago related "[h]ow he blew this guy away, and he was motioning how he even held the gun." *Id.*, pp. 25-26; *Id.*, pp. 24-25.

The evidence of guilt presented at trial was quite strong. In contrast, Crago's proposed alibi evidence is fairly weak. Crago asserts he was on Fort Huachuca at 5:10 a.m. when the victim was killed, but there is no evidence to support that. (Doc. 30-10, pp. 19-20); (Doc. 30, Exhibit OO, pp. 18-19) There is a record of his obtaining a visitor's pass that morning, but

Kevin W. Brant, the guard on duty, "indicated he did not recall having seen [Crago's] vehicle enter Post nor did he recall having seen it exit." *Id.*; *Id.*; (Doc. 30-8, p. 21); (Doc. 30, Exhibit KK, exhibit B) Tovah Sitts testified that Crago gave her a ride home that morning and left the Fort around 4:30 a.m. (Doc. 30-10, p. 20); (Doc. 30, Exhibit OO, p. 19) That still would have given Crago time to drive from the Fort to the scene of the murder by 5:10 a.m., the time of the shooting. *Id.*, pp. 19-20; *Id.* pp. 18-19.

According to Crago, the witnesses saw a certain John Wood remove the victim's body from the crime scene. He is incorrect. None of the witnesses was able to identify the two men in the driveway except for S.A. *Id.*, pp. 22, 24; *Id.*, pp. 21, 23. And S.A. said *Crago* was the one who removed the body, not Wood. *Id.*, p. 24; *Id.*, p. 23. John Wood *was* stopped by police in the neighborhood shortly after the shooting, but contrary to Crago's assertions, there is no evidence that he was driving the vehicle that removed the victim from the scene. *Id.*, p. 22; *Id.*, p. 21. Wood knew the victim, Davidson, and S.A.'s mother, Cecelia. *Id.*, pp. 23-24; *Id.*, pp. 22-23. He apparently dropped Davidson off at Cecelia's house the previous evening. *Id.* He told his mother-in-law that when Cecelia learned of the murder from her son, she paged him asking him to come back to the house. *Id.* That explains his presence in the neighborhood early that morning.

In light of the strong evidence of guilt and the weak evidence of alibi, the trial court concluded that "there is no compelling reason to believe that the jury would have accepted defendant's alibi, nor that it would have concluded that John Wood killed Charlie Davidson." (Doc. 30-10, p. 26); (Doc. 30, Exhibit OO, p. 25) Accordingly, the trial court found that Crago did not make a colorable claim of "newly-discovered evidence" and Crago did not merit post-conviction relief. (Doc. 30-10, pp. 8-9, 26-27); (Doc. 30, Exhibit OO, pp. 7-8, 25-26) Crago appealed citing, among other things, *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). (Doc. 30-11, p. 11); (Doc. 30, Exhibit RR, p. 10) The Arizona Court of Appeals denied relief without specific analysis of *Brady*. (Doc. 30-11, p. 20); (Doc. 30, Exhibit SS, p. 3)

Assuming the Arizona Court of Appeals considered Crago's *Brady* issue, its decision rejecting this claim was not "contrary to" or "an unreasonable application of" federal law. *See*

28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1091-1092 (2013) ("[W]hen a defendant convicted in state court attempts to raise a federal claim . . . and a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question, . . . the federal claim at issue . . . must be presumed to have been adjudicated on the merits. . . ."). Neither was it "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. Crago cannot show the state failed to disclose material exculpatory evidence in its possession at the time of trial. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963).

The trial court found there was no DNA evidence in the state's possession prior to the trial. (Doc. 30-10, pp. 4-5); *see also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."). Crago produced a DNA test dated March 23, 1995, but the trial court rejected it because Crago did not establish foundation for the document. *Id*. Crago did not produce clear and convincing evidence rebutting the presumption that the state court's decision on this issue was correct. 28 U.S.C.A. § 2254 (e)(1).

Moreover, even if the test Crago produced was genuine, it was not material evidence because its disclosure would not have changed the results of the proceeding. Crago argues the state's failure to produce this evidence caused him to adopt an unsuccessful self-defense theory at trial. But Crago noticed his self-defense theory on February 22, 1995, before the date of the DNA test – March 23, 1995. (Doc. 30-10, p. 5); (Doc. 30-10, p. 14) Failure to disclose the test could not have caused him to reject his alibi defense and adopt his unsuccessful self-defense theory.

Finally, the court holds that if Crago had presented an alibi defense at trial rather than a self-defense theory, he still would have been convicted. The evidence of guilt was strong, and the evidence of alibi was weak. Therefore, the DNA test was not material evidence and the state's failure to disclose it, assuming it existed, did not violate *Brady*. This claim should be denied on the merits.

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order DENYING the Petition for Writ of Habeas Corpus. (Doc. 1)

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation. If objections are not timely filed, they may be deemed waived. The Local Rules permit a response to an objection. They do not permit a reply to a response.

DATED this 4th day of April, 2016.



Leslie A. Bowman
United States Magistrate Judge